UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **WOLF PAWOCHAWOG-MEQUINOSH,** | : |
| **Plaintiff,** | : |
| | : |
| v. | : |
| | : |
| **RHODE ISLAND DEPARTMENT OF** | : |
| **CORRECTIONS; WAYNE SALISBURY,** | : |
| **Acting Director, Rhode Island Department of** | : |
| **Corrections; WILLIAM DEVINE, Acting** | : |
| **Warden, John J. Moran Medium Security** | : |
| **Facility; MICHAEL B. FENNESSEY, Deputy** | : |
| **Warden, John J. Moran Medium Security** | : |
| **Facility; BARRY WEINER, Assistant Director** | : |
| **for Rehabilitative Services; and KENNETH** | : |
| **FINDLAY, Office of Institutional Programs,** | : |
| | : |
| **Defendants.** | : |

## VERIFIED COMPLAINT

### PRELIMINARY STATEMENT

1.     This case addresses the deprivation of Plaintiff Wolf Pawochawog-Mequinosh's

right to the free exercise of religion, in violation of by the Religious Land Use and

Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq. ("RLUIPA"). Plaintiff Pawochawog-

Mequinosh ("Wolf"), who is incarcerated at the Adult Correctional Institutions ("ACI") in

Cranston, Rhode Island, has repeatedly sought to obtain and wear an Apache headband to

express his sincere religious beliefs, but Defendants—the Rhode Island Department of

Corrections ("RIDOC"); Wayne Salisbury, the Acting Director of RIDOC; William Devine,

Acting Warden of the John J. Moran Medium Security Facility; Michael P. Fennessey, Deputy

Warden of the John J. Moran Medium Security Facility; Barry Weiner, Assistant Director for

Rehabilitative Services; and Kenneth Findlay, Office of Institutional Programs—have repeatedly

denied those requests without justification.

2.      Plaintiff Wolf is Native American and was raised in the spiritual tradition of the White Mountain Apache Tribe. He identifies his religion to be that of a Native American Shaman, also known as a Medicine Man. Apache men traditionally have worn cloth headbands approximately two to three inches wide that tie in the back. Wolf sincerely believes that wearing an Apache headband would express his Apache faith and the unity of the tribe and spirits.

3.      This case is controlled by the principles relied upon by this Court in *Harris v. Wall*, 217 F. Supp. 3d 541 (D.R.I. 2016), to grant a preliminary injunction to overturn RIDOC's restrictions on the rights of incarcerated Muslims to wear kufis, a Muslim head covering, in the prison. This Court concluded that the plaintiff was substantially likely to show that RIDOC's restrictions violated RLUIPA by imposing a "substantial burden" on a "religious exercise," and RIDOC could not meet its burden of establishing that the restrictions were the "least restrictive means" to achieve a "compelling governmental interest." This Court found it especially relevant that RIDOC allows incarcerated persons to wear baseball hats and knit caps during recreation time in the yard. *Id.* at 545.

4.      In 2017, following this Court's preliminary injunction in *Harris*, RIDOC revised its policies and now allows Muslim and Jewish prisoners to wear kufis and yarmulkes throughout the prison, subject to RIDOC's usual security and search policies. *See Jefferson v. Wall*, No. CV 16-652 WES, 2018 WL 4696738, at *1 (D.R.I. Sept. 30, 2018).

5.      As this Court's decision in *Harris* demonstrates, Defendants are in violation of RLUIPA through their repeated denials of Wolf's requests to obtain and wear an Apache headband. Like the restrictions on incarcerated Muslims' ability to wear a kufi, the denial of a headband to Wolf imposes a "substantial burden" on his "religious exercise." Because RIDOC

policies now allow prisoners to wear kufis and yarmulkes throughout the prison system, Defendants cannot plausibly contend that denying Wolf a headband is the "least restrictive means" to achieve a "compelling governmental interest."

## JURISDICTION AND VENUE

6.    Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over Plaintiff's claim that Defendants violated Wolf's rights under RLUIPA, 42 U.S.C. § 2000cc et seq.

7.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because all of the events giving rise to these claims occurred in Cranston, Rhode Island.

## PARTIES

8.    Plaintiff Wolf Pawochawog-Mequinosh ("Wolf"), formerly known as Brian Keith Brownell, is a resident of the State of Rhode Island, who is in the custody of Defendant RIDOC. He is currently confined in the John J. Moran Medium Security Facility ("Medium Security Facility"), in Cranston, Rhode Island.

9.    Defendant Rhode Island Department of Corrections ("RIDOC") is a department of the State of Rhode Island, established to provide for the custody, care, discipline, training, treatment, and study of persons committed to state correctional institutions pursuant to R.I. Gen. Laws § 42-56-1 et seq.

10.    Defendant Wayne Salisbury is the Acting Director of RIDOC. In this position, Defendant Salisbury bears responsibility for the management, administration, and supervision of the Rhode Island prison system, pursuant to R.I. Gen. Laws § 42-56-10 *et seq*. As such, Defendant Salisbury is the supervising authority and commanding officer of the other individual Defendants and all RIDOC employees. As the Acting Director, Defendant Salisbury bears

responsibility for creating, maintaining, and implementing RIDOC's policies for accommodating the free exercise of religion of all persons incarcerated by RIDOC.

11.     Defendant William Devine is the Acting Warden of the Medium Security Facility where Plaintiff Wolf is currently incarcerated. He bears responsibility for supervising all RIDOC employees in the Medium Security Facility and for implementing RIDOC's policies in the Medium Security Facility.

12.     Defendant Kenneth Fennessey is the Deputy Warden of the Medium Security Facility. He is the most recent RIDOC official to deny Wolf's request to obtain and wear an Apache headband.

13.     Defendant Barry Weiner is RIDOC's Assistant Director for Rehabilitative Services. In that position, he bears responsibility "to coordinate and supervise all religious programs. 240-RICR-10-00-2 § 2.6.

14.     Defendant Kenneth Findlay is the Interdepartmental Project Manager within RIDOC's Office for Rehabilitative Services. Upon information and belief, Defendant Findlay has responsibility for managing religious programming within that office.

15.     At all times relevant hereto, each of the individual Defendants was acting under the color of state law. The individual Defendants are each sued in their official capacities.

## FACTS

### A.    WOLF'S SINCERE RELIGIOUS BELIEFS AND PRACTICES

16.     Wolf is a Native American whose sincere religious beliefs are based on the traditions of the White Mountain Apache, as taught to him by his grandfather and other family members, who were enrolled members of the tribe.

17.     RIDOC recognizes Wolf's Native American heritage, as shown by the fact that it

lists his race as "American Indian" in its data management system. *See* Exhibit 1, Screenshot of RIDOC Inmate Search Website.

18.    At birth, Wolf was assigned the name Brian Keith Brownell. In January 2021, Wolf petitioned the Rhode Island Superior Court to change his name to Wolf Pawochawog-Mequinosh to express his Apache heritage and faith.

a.    As Wolf explained in an affidavit supporting the name change petition, he sought to change his name "for religious and spiritual reasons." Exhibit 2, Affidavit of Brian Brownell ¶ 5, submitted in *In re Brian Brownell*, C.A. No.: NP-2021-0047 (R.I. Super. Ct. Aug. 26, 2021).

b.    The affidavit supporting the name change petition explained that Wolf's paternal relations were members of the White Mountain Apache, and Wolf believes that his ethnic heritage is approximately half Apache. *Id.* at ¶ 6.

c.    The affidavit also explains that when Wolf was a child, he was given the name Pawochawog Mequinosh by an Apache elder. He later chose the first name Wolf because he considers the wolf to be his spirit animal. *Id.* at ¶¶ 7, 9.

d.    The affidavit declares Wolf's Native American identity and expresses his sincere religious beliefs arising from the Apache tradition: "Changing my legal name to Wolf Pawochawog-Mequinosh would be very meaningful to me as an Apache man. I wish to be called Wolf Pawochawog-Mequinosh because it connects me to my spirituality, religion, and history." Id. ¶ 12.

19.    On May 4, 2022, following an evidentiary hearing, the Rhode Island Superior Court granted Wolf's name change petition. Exhibit 3, Order, *In re Brian Brownell*, C.A. No.: NP-2021-0047 (R.I. Super. Ct. May 4, 2022).

20.    Pursuant to the Superior Court's decision, RIDOC identifies the Plaintiff as Wolf Pawochawog-Mequinosh in its data management system. *See* Exhibit 1.

21.    Wolf has repeatedly explained to Defendants and other RIDOC officials that he follows Apache religious traditions as taught to him by his grandfather and other family members, and that he has sought to follow the religious path of a shaman, which is also sometimes referred to as a medicine man. *See, e.g.,* Exhibit 4, Letter to Deputy Warden Bray (Apr. 8, 2022); Exhibit 5, Letter to RIDOC Legal Counsel (Apr. 21, 2022).

22.    Communicating with spirits and ancestors plays an important part in Wolf's religious practices. To do so, Wolf uses rune stones and tarot cards. He considers these artifacts to be valuable assets that allow him to contact spirits, both good and evil, as well as ancestors. Wolf believes that these communications help guide him on his path.

23.    Since 2019, Wolf has sought to obtain and wear an Apache headband in the prison to express his religious faith. As has long been recognized, "Headbands are sacred in the Native American Religions. They symbolize a way of life, living in harmony with all of one's surroundings." Louis M. Holscher, *Sweat Lodges and Headbands: An Introduction to the Rights of Native American Prisoners*, 18 New England Journal on Criminal and Civil Confinement 33, 34 n.4 (Winter/Summer 1992).

24.    Native American headbands are recognized as a religious item by the Federal Bureau of Prisons, which allows incarcerated individuals who are adherents to Native American religions to wear headbands on the same basis as Muslims and Jews can wear kufis and yarmulkes. See Bureau of Prisons, Program Statement, "Religious Beliefs and Practices" (Dec. 31, 2004), https://www.bop.gov/policy/progstat/5360_009.pdf, at p.12. Many state departments of corrections have similarly recognized headbands as an approved religious item for adherents

of Native American religions.

**B.    RIDOC REPEATEDLY DENIED WOLF'S REQUESTS FOR AN APACHE HEADBAND**

25.    Since 2019, Wolf has repeatedly requested permission to obtain and wear an Apache headband, but Defendants have denied each of these requests.

26.    The only reasons provided by Defendants for these denials have been: (a) Wolf's religion is designated as "Pagan/Wiccan" in RIDOC's data management system and an Apache headband is not an approved religious item for individuals with that designation, and (b) Apache headbands have not been approved as a religious item in any RIDOC facility.

27.    Neither of the reasons provided by RIDOC remotely establishes that the denial is the "least restrictive means" to achieve a "compelling governmental interest."

**i.    RIDOC's Inflexible System of Religious Designations Unlawfully Burdens the Free Exercise of Religion**

28.    RIDOC's official policy on the free exercise rights of incarcerated persons declares what the Free Exercise Clause and RLUIPA require and what should be RIDOC's actual policy: "All inmates have the right to the free exercise of their religious beliefs and the liberty of worship according to the dictates of their consciences." 240 R.I.C.R. § 10-00-2.3.

29.    In practice, however, RIDOC does not carry out that policy. Instead, it limits the ability of incarcerated individuals to practice only certain designated religions and only in ways that RIDOC officials have approved for individuals with that designation.

30.    RIDOC requires that all persons incarcerated at the ACI designate that they belong to one (and only one) religious category. RIDOC employs a limited number of possible religious designations, which include "Catholic," "Jewish," "Muslim," "Pagan/Wiccan," and "Other."

31.    RIDOC's system does not include a religious designation specifically for adherents of Native American religious traditions.

32.    The religious designation selected by each prisoner becomes part of the official inmate file that RIDOC maintains for each prisoner in a computer system called "INFACTS."

33.    Under RIDOC's policies, the religion designated by each incarcerated person in the INFACTS system determines the religious observances they will be allowed to attend and the religious items they will be allowed to obtain.

34.    This policy was explained in an orientation session for new prisoners in the Medium Security Facility: "Your declared religion is listed in INFACTS, [and] this will determine your eligibility to participate in certain religious events and will also determine which religious items you are permitted to order from catalogs." Exhibit 6, Medium Security Orientation.

35.    Consistent with its policy of limiting incarcerated individuals' religious exercise to the specific religions designated in INFACTS, RIDOC frequently announces upcoming religious events and declares that prisoners may only attend the event if they have designated that religion in the INFACTS system. For example, in December 2022, RIDOC posted a "Notice to Pagan Inmates" regarding the Winter Solstice event, which stated that in order to be allowed to attend the event "[y]our religious designation must be listed in INFACTS as Wicca/Pagan." Exhibit 7, Winter Solstice 2022 Notice.

36.    RIDOC maintains lists of religious items that incarcerated individuals may request based on the religious designations employed in INFACTS. For instance, in March 2019, Deputy Warden Kathy Lyons of Medium Security sent a memo entitled "Allowed Religious Items" to "All Wiccan/Pagan Inmates." Exhibit 8, Memorandum, "Allowed Religious Items"

(Mar. 26, 2019). That memo lists various items that RIDOC has approved for incarcerated individuals designated "Pagan/Wiccan," including "Divination Tools," such as "Tarot cards, Rune Cards or Rune Stones."

37.    Under RIDOC's policies, incarcerated individuals may only obtain religious items that have been approved for the specific religious designation listed for them in INFACTS. Accordingly, only individuals who are designated "Pagan/Wiccan" may seek permission to obtain tarot cards and rune stones because those artifacts have only been approved for individuals in the Pagan/Wiccan category.

38.    RIDOC's policies allow incarcerated individuals with certain religious designations to obtain and wear headgear that expresses their religious traditions. Accordingly, prisoners who are designated Jewish in the INFACTS system may wear a yarmulke throughout the prison, and prisoners who are designated Muslim in the INFACTS system may obtain and wear a kufi throughout the prison. *See Jefferson v. Wall*, No. CV 16-652 WES, 2018 WL 4696738, at *1 (D.R.I. Sept. 30, 2018).

39.    RIDOC's policies make no allowances for individuals like Wolf whose religious beliefs and practices do not fit squarely in the rigid religious designations employed in RIDOC's data management system. Regardless of the sincerity of their religious beliefs, individuals with unusual or nonconforming religious beliefs and practices may only obtain items and attend events that RIDOC has approved for their particular religious designation.

40.    Apache headbands are not an approved religious item for any of the religious categories in RIDOC's system. Exhibit 9, Memorandum from Deputy Warden Jankowski (Oct. 5, 2022).

**ii.    Defendants Required Wolf to Designate a Religion But RIDOC Does Not Employ a Religious Designation That Aligns with His Beliefs and Practices**

41.     In 2018, while he was incarcerated in the Medium Security Facility, Wolf learned that, without having chosen a religious designation, he was listed in the INFACTS system as Catholic.

42.     Wolf discussed the issue with a RIDOC counselor and explained that he considers himself to be a "Native American Shaman/Medicine Man," and that his religious beliefs and practices follow Apache traditions as Wolf understands them. Wolf also explained that he celebrates the solstice and that he uses rune stones and tarot cards to communicate with spirits and ancestors.

43.     The RIDOC counselor told Wolf that RIDOC's system does not include a "Native American" religious designation and recommended that Wolf choose the designation "Pagan/Wiccan."

44.     Based on this advice, Wolf designated his religion to be "Pagan/Wiccan." Because he chose the religious designation "Pagan/Wiccan," Wolf was able to obtain tarot cards and rune stones, at his own expense, which allows him to practice what he considers an important religious exercise. This designation has also allowed him to attend the Winter Solstice ceremony and other events that RIDOC classifies as "Pagan," which also allows Wolf to participate in religious events consistent with his sincere religious beliefs.

### iii.     Wolf's First Request for an Apache Headband

45.     Wolf first requested an Apache headband in March 2019 while he was incarcerated in Medium Security. Wolf received no response to the request.

### iv.     Wolf's Second Request for an Apache Headband

46.     In December 2020, after completing his sentence, Wolf was transferred to the Intake Center while awaiting trial on other charges.

47.    On March 23, 2022, Wolf submitted another request for an Apache headband. In doing so, Wolf explained that he is native American and follows the religious traditions of the White Mountain Apache, as he understands them.

48.    Deputy Warden Rachel Bray of the Intake Center approved Wolf's request to have his rune stones and tarot cards returned to his possession, as those artifacts have been approved for individuals like Wolf who are designated as "Pagan/Wiccan" in INFACTS.

49.    On April 7, 2022, Deputy Warden Bray sent Wolf a memorandum responding to the request for a headband and sought to clarify whether Wolf was properly designated as "Pagan/Wiccan" in INFACTS. The memo stated in full:

> After further discussion regarding your request for an Apache headband as you mention is part of your religious beliefs, your religion is identified as Pagan/Wicca in INFACTS.
>
> To further clarify your religious beliefs are you stating that you are Indian or that your religious beliefs are Pagan/Wicca?

Exhibit 10, Memorandum, Native American Head Band (Apr. 7, 2022).

50.    On April 8, 2022, Wolf responded to Deputy Warden Bray in a letter that explained that his religion is that of an Apache Shaman, but RIDOC does not employ a specific designation for that religion. Among the designations that RIDOC employs, Wolf considered "Pagan" to be the most appropriate because, according to Webster's New World College Dictionary, a pagan is a person who worships nature and the earth, as Wolf does. Wolf therefore considered it most accurate among the available options to maintain his religious designation as "Pagan." Exhibit 4, Letter to Deputy Warden Bray (Apr. 8, 2022).

51.    On April 18, 2022, Wolf discussed his request for an Apache headband in an in-person meeting with Deputy Warden Bray.

a.    Deputy Warden Bray told Wolf that in order to consider the request to

obtain a headband he would need to change his religious designation from "Pagan/Wiccan" to "Other" because, in her view, Wolf's religion does not fall within the category of "Pagan."

        b.      Bray further explained that, if Wolf were to change his religious designation to "Other" in order to request permission to obtain an Apache headband, he would no longer be designated "Pagan" and therefore would not be entitled to possess items such as rune stones and tarot cards that RIDOC has approved for individuals designated as "Pagan/Wiccan," and he would not be allowed to attend solstice events that RIDOC approves for individuals designated "Pagan/Wiccan."

     52.    On May 2, 2022, Ian P. Anderson, Senior Legal Counsel at RIDOC, sent Wolf a letter, which reiterated that Wolf could seek to obtain Native American religious artifacts only if he changed his religious designation from "Pagan/Wiccan" to "Other." In his letter, Mr. Anderson stated on behalf of RIDOC:

> [T]he religious designations used at the Department of Corrections have a specific definition and allows for specific religious artifacts to be purchased by an inmate. I understand that your beliefs are that of a Native American Shaman/Medicine Man. Under the present designations, it would seem the most appropriate designation would be 'other' so you may obtain a Native American headband.

Exhibit 11, Letter from Ian Anderson (May 2, 2022).

     53.    On May 23, 2022, RIDOC Attorney Anderson sent Wolf a follow-up letter, which reiterated that Wolf was required to choose between (a) maintaining the designation "Pagan/Wiccan," which would entitle him to possess rune stones and tarot cards and participate in solstice events that RIDOC has approved for individuals designated "Pagan," or (b) changing his designation to "Other" in order to seek permission to obtain a Native American headband. Mr. Anderson added: "I now consider this matter closed." Exhibit 12, Letter from Ian Anderson

(May 23, 2022).

54.    By insisting that Wolf could only seek permission to obtain an Apache headband if he changed his religious designation from "Pagan/Wiccan" to "Other," Defendants required Wolf to choose between his religious practices. He could seek to obtain a headband or he could continue to possess runes and tarot cards and attend solstice events, but he could not do both.

55.    Wolf decided not to change his designation to "Other" out of fear that he would lose access to rune stones and tarot cards, and the ability to participate in ceremonies and events that are consistent with his religious faith.

### v.    Wolf's Third Request for an Apache Headband

56.    On October 5, 2022, Wolf sent a letter to Joseph Jankowski, who replaced Defendant Bray as Deputy Warden of the Intake Center, reiterating his request to obtain an Apache headband. Exhibit 13, Letter to Deputy Warden Jankowski (Oct. 5, 2022).

57.    That same day, Wolf received a memorandum from Jankowski denying the request. In denying the request, Jankowski stated, "This particular article is not on any authorized lists." Exhibit 9, Memorandum from Deputy Warden Jankowski (Oct. 5, 2022).

58.    Wolf appealed the October 5 denial of his request for a headband and exhausted available administrative remedies.

59.    On October 9, 2022, Wolf submitted a Level 1 Grievance. Exhibit 14, Inmate Grievance (Oct. 9, 2022).

60.    RIDOC's grievance procedures provide that if the prisoner has not received a response to a Level 1 Grievance within fifteen working days, they may file an appeal, which is referred to as a Level 2 Grievance. See Exhibit 15, Inmate Grievances, RIDOC Policy No. 13.10-5 DOC, ¶ IV(E)(5)(j) (effective date Jan. 12, 2023).

61.     On October 31, 2022, having received no response, Wolf submitted an appeal of the grievance, which under RIDOC's grievance procedures is referred to as a Level 2 Grievance. Exhibit 14, Inmate Grievance (Oct. 9, 2022).

62.     On November 14, 2022, Deputy Warden Jankowski of the Intake Center, who had denied Wolf's request for a headband on October 5, 2022, sent Wolf a memorandum rejecting Wolf's grievance, stating that he could not "locate any information on this issue." Exhibit 16, Memorandum from Deputy Warden Jankowski (Nov. 14, 2022) (handwritten copy).

    a.     Construing Wolf's grievance as a challenge to the 2019 denial of his request for a headband while Wolf was in Medium Security, Defendant Jankowski suggested that Wolf would need to file a new grievance regarding the denial of the headband for his current placement in the Intake Center. *Id.*

    b.     The memorandum made clear, however, that the outcome of a new grievance was foreordained and Wolf would not be allowed a headband: "'Headbands' are not an approved headwear according to any religious doctrine within this Department, only those specific headwear listed and sold through Keefe are authorized." Keefe, mentioned in the denial of the grievance, is a vendor of various products for corrections institutions. *Id.*

63.     On November 18, 2022, in conformity with Defendant Jankowksi's suggestion that he file a new grievance, Wolf submitted a new Level 1 Grievance. Exhibit 17, Inmate Grievance (Nov. 18, 2022) (handwritten copy).

    a.     In that grievance, Wolf explained that his religious beliefs are those of a "Native American Apache Shaman/Medicine Man." Id.

    b.     The grievance further explained that the religious artifacts that he needs for his religious practices include tarot cards, rune stones, and a Native American headband, and

that his religious practices include attending pagan feasts and celebrations. Id.

c.      Wolf submitted the Level 1 Grievance by submitting it to Corrections Officer Trudell, who signed the grievance and made a copy for Wolf. Corrections Officer Trudell then placed the grievance in the official grievance collection box at approximately 8:30 p.m. on November 18, 2022.

64.      On December 16, 2022, not having received a response to the November 18 grievance, Wolf submitted a Level 2 Grievance. Exhibit 18, Inmate Grievance (Dec. 16, 2022) (handwritten copy).

65.      On December 21, 2022, Billie-Jo Gallagher, RIDOC's Departmental Grievance Coordinator, sent Wolf a letter stating that the November 18, 2022 grievance was being returned unprocessed. The letter stated that Wolf was required to follow the correct procedure for filing a grievance but Ms. Gallagher's letter identified nothing deficient about Wolf's grievance or explained why the grievance was not being processed. Exhibit 19, Letter from Billie-Jo Gallagher (Dec. 21, 2022).

**vi.      Wolf's Fourth Request for an Apache Headband**

66.      In September 2023, Wolf was transferred from the Intake Center to Medium Security.

67.      On September 20, 2023, Wolf submitted a request slip to Deputy Warden Aul requesting permission to obtain a replacement set of rune stones because his current set is missing some stones, and to obtain and wear an Apache headband. In his request, Wolf explained that these items were necessary for him to exercise his religious beliefs.

68.      On October 2, 2023, having received no response to his first request slip, Wolf submitted a second request slip to obtain an Apache headband. This request was submitted to

Defendant Kenneth Fennessey, Deputy Warden of the Medium Security Facility.

69.    On October 28, 2023, Wolf followed up by sending a letter to Defendant Fennessey, reiterating the request. *See* Exhibit 20, Inmate Grievance (Nov. 6, 2023).

70.    Having received no responses to his request slips, Wolf brought a grievance to challenge Defendants' failure to grant his repeated requests for an Apache headband and exhausted the available administrative remedies.

a.    On November 6, 2023, Wolf submitted a Level 1 Grievance challenging the denial of his request for an Apache headband. Exhibit 20, Inmate Grievance (Nov. 6, 2023).

b.    On or around November 9, 2023, Wolf received a letter from Lieutenant Gardner, who acknowledged receipt of the grievance. Gardner informed Wolf that the grievance would be denied because RIDOC does "not currently permit Native Headbands to be worn." Gardner suggested that Wolf contact Defendant Ken Findlay of RIDOC's Office of Institutional Programs, which manages religious programming within the ACI. Exhibit 21, Letter from Lieutenant Gardner (undated, received approximately Nov. 9, 2023).

c.    Although Lieutenant Gardner indicated in his November 9 letter that Wolf's Level 1 Grievance would be denied, Wolf did not receive an official denial of his Level 1 Grievance.

d.    Under RIDOC's Grievance Policy, a prisoner may file a Level 2 Grievance if they have not received a response to a Level 1 Grievance within fifteen working days. See Exhibit 15, Inmate Grievances, RIDOC Policy No. 13.10-5 DOC, ¶ IV(E)(5)(j) (effective date Jan. 12, 2023).

e.    On December 6, 2023, Wolf filed a Level 2 Grievance. Exhibit 22, Inmate Grievance (Dec. 6, 2023).

f.      On December 18, 2023, Wolf received a letter from Billie-Jo Gallagher, RIDOC's Departmental Grievance Coordinator, which states that his grievance was being returned unprocessed. The letter is identical in wording and content as the letter Ms. Gallagher sent in December 2022 regarding Wolf's earlier grievance. Like the December 2022 letter, it states that a prisoner must utilize the grievance process in the proper order, by first filing a Level 1 Grievance and then filing a Level 2 Grievance. Like the previous letter, it does not identify any procedural error that Wolf had made or explain why the grievance was being returned unprocessed. Exhibit 23, Letter from Billie-Jo Gallagher (Dec. 18, 2023).

g.      Although Ms. Gallagher's letter stated that Wolf's grievance would be returned to him, Ms. Gallagher did not actually return the grievance form.

h.      On December 21, 2023, Wolf sent a letter to Ms. Gallagher, which explained that he had followed RIDOC's grievance procedures by filing a Level 1 Grievance; that he received acknowledgment from Lieutenant Gardner that he had received the Level 1 Grievance; that he waited for more than fifteen working days and did not receive a response to the Level 1 Grievance; and that he then filed a Level 2 Grievance. Exhibit 24, Letter to Billie-Jo Gallagher (Dec. 21, 2023).

i.      Wolf received no further response from Ms. Gallagher.

71.     In addition to pursuing and receiving the denial of his grievance, Wolf heard from several additional RIDOC officials who confirmed that he would not be allowed to obtain a headband.

a.      Defendant Fennessey sent Wolf a memorandum dated November 20, 2023, and confirmed that Wolf would be entitled to have a set of rune stones but reiterated that "[t]he Native American headband has not been authorized in any facility." Exhibit 25,

Memorandum from Deputy Warden Fennessey (Nov. 20, 2023).

b.     Following Lieutenant Gardner's advice, Wolf sent a letter to Defendant Findlay on November 7, 2023, and asked for permission to obtain and wear an Apache headband. As Wolf explained, "I am a Native American, White Mountain Apache, and the wearing of a Native American Headband is a part of my religious beliefs, along with the use of Tarot Cards and Rune Stones." Exhibit 26, Letter to Kenneth Findlay (Nov. 7, 2023).

c.     Wolf received a reply to his letter to Mr. Findlay in a letter dated December 21, 2023, sent by Sarah Pinelli on behalf of Mr. Findlay, which states that Wolf could not seek to obtain a Native American headband because of his designated religion: "Currently in the Department's database, your chosen religion is Pagan. You will need to decide what faith you will follow which will include what items of worship will be allowed. Once that is decided, then the Warden will have to approve what can be worn or used for worship services." Exhibit 27, Letter from Sarah Pinelli on behalf of Kenneth Findlay (Dec. 21, 2023).

## C.     THE ONGOING HARM TO WOLF FROM THE SUBSTANTIAL BURDENS ON HIS RELIGIOUS EXERCISE IMPOSED BY THE DEFENDANTS

72.     Defendants' denial of Wolf's requests to obtain and wear an Apache headband has caused Wolf severe and daily distress, as he is unable to express his religious traditions and beliefs as he sincerely understands them.

73.     Defendants have also caused Wolf ongoing distress by repeatedly demanding that Wolf choose among his religious practices in order to have even a chance at obtaining approval of the Apache headband. Although Defendants have consistently declared that Native American headbands are not approved for any religious designation that RIDOC employs, Defendants have repeatedly suggested that Wolf might be able to request permission to obtain an Apache headband if he changed his religious designation from Pagan/Wiccan. Defendants have made

clear, however, that if he did so, Wolf would lose his ability to practice significant aspects of his religion. Because his religious designation is currently "Pagan/Wiccan," Wolf has been able to obtain rune stones and tarot cards and to attend Winter Solstice events. If he changed his religious designation, Wolf would not be authorized to possess these items and attend these events, as RIDOC has authorized them only for individuals with the designation "Pagan/Wiccan." RIDOC's policies thus force Wolf to choose among his religious practices and forego practices that RIDOC has not approved for his religious designation.

## CLAIMS FOR RELIEF

### CLAIM ONE
### *Violation of the Religious Land Use and Institutionalized Persons Act*
### (Against All Defendants)

74.     By denying Wolf's repeated requests to obtain and wear an Apache headband, Defendants have violated Wolf's right to the free exercise of religion, as protected by the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

75.     RLUIPA provides:

**(a) In general**

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

**(b) Exception**

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person--

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1.

76.     Plaintiff Wolf is a "person" as that term is used in RLUIPA. 42 U.S.C. § 2000cc-1(a) and 42 U.S.C. § 1997(3).

77.     At all relevant times, Wolf was confined to the ACI, which is an "institution," as defined in 42 U.S.C. 1997(1).

78.     Defendant RIDOC is a "government" as that term is used defined in RLUIPA. 42 U.S.C. § 2000cc-5(4)(A)(i)-(iii), and each of the individual Defendants are agents of RIDOC.

79.     Under RLUIPA, RIDOC may not impose a "substantial burden" on the free exercise of religion unless the burden is the "least restrictive means" to advance a "compelling governmental interest."

80.     For adherents of Native American religious traditions like Wolf, wearing a headband is a "religious exercise" as that term is used in RLUIPA.

81.     Defendants' denial of Wolf's requests for a headband have imposed a "substantial burden" on Wolf's "religious exercise."

82.     The substantial burden that Defendants have imposed on Wolf's right to the free exercise of religion does not serve a "compelling governmental interest" and is not the "least restrictive means" of advancing any compelling interest.

## CLAIM TWO
### *Violation of the Religious Land Use and Institutionalized Persons Act*
**(Against All Defendants)**

83.     Defendants' policies and practices for accommodating religion impose a "substantial burden" on the free exercise of religion, as protected by RLUIPA, by restricting the ability of individuals like Wolf to practice religion when their practices do not fit within the limited and rigid religious designation RIDOC employs.

84.     Defendants' policies and practices impose a substantial burden on the free

exercise of religion by requiring individuals like Wolf to choose among their religious practices and forgo practices that Defendants have not approved for their religious designation.

85.     The substantial burdens on the free exercise of religion imposed by Defendants' policies and practices are not the least restrictive means to achieve a compelling governmental interest.

## PRAYER FOR RELIEF

Plaintiff Wolf requests that this Court grant the following relief:

A.     A declaratory judgment that Defendants' denials of Wolf's requests for an Apache headband violate Wolf's right to the free exercise of religion, as protected by RLUIPA;

B.     A declaratory judgment that Defendants' policies for prisoners' religious practices violate RLUIPA by failing to accommodate individuals whose religious beliefs and practices do not conform to RIDOC's limited religious categories.

C.     A preliminary injunction, and after a hearing on the merits, a permanent injunction ordering Defendants to allow Wolf to obtain and wear an Apache headband, without giving up his ability to practice other aspects of his sincere religious beliefs, including by possessing and using rune stones and tarot cards and participating in solstice events, whether or not those artifacts and activities align with the religious designation for Wolf in RIDOC's data management system;

D.     After a hearing on the merits, a permanent injunction ordering RIDOC to revise its policies and procedures to allow individuals whose religious beliefs and practices do not fit within RIDOC's system of religious designations to exercise their sincere religious beliefs and practices even when those beliefs and practices do not align with the beliefs and practices that RIDOC has approved for the religious designations employed in RIDOC's system;

      E.      An award of reasonable attorneys' fees and costs of litigation, pursuant to 42

U.S.C. § 1988 and other applicable law; and

      F.      Such other and further relief as this Court deems just and proper.

                  Respectfully submitted,

                  WOLF PAWOCHAWOG-MEQUINOSH

                  By his attorneys:

                    /s/ Jared A. Goldstein

                  Jared A. Goldstein (Bar No. 10715)
                  Prisoners' Rights Litigation Clinic
                  Roger Williams University School of Law
                  1 Empire Plaza, Ste 435
                  Providence, RI 02903
                  (401) 276-4880
                  Jgoldstein@rwu.edu

                  Lynette Labinger (Bar No. 1645)
                  128 Dorrance St., Box 710
                  Providence, RI 02903
                  (401) 465-9565
                  ll@labingerlaw.com
                  Cooperating counsel, ACLU Foundation of RI

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF RHODE ISLAND

WOLF PAWOCHAWOG-
MEQUINOSH,

     Plaintiff,

v.

RHODE ISLAND DEPARTMENT OF
CORRECTIONS; WAYNE
SALISBURY, Acting Director, Rhode
Island Department of Corrections;
WILLIAM DEVINE, Acting Warden,
John J. Moran Medium Security Facility;
MICHAEL B. FENNESSEY, Deputy
Warden, John J. Moran Medium Security
Facility; BARRY WEINER, Assistant
Director for Rehabilitative Services; and
KENNETH FINDLAY, Office of
Institutional Programs,

     Defendants.

## VERIFICATION

I, Wolf Pawochawog-Mequinosh, hereby declare under penalty of perjury as follows:

1.     I am the Plaintiff in the above-captioned lawsuit.

2.     I bring this action on my own behalf.

3.     I have read the Complaint filed in the above-captioned action and it is true and

correct to the best of my knowledge, information and belief.

I, Wolf Pawochawog-Mequinosh, hereby declare under penalty of perjury pursuant to

28 U.S.C. §1746 that the foregoing is true and correct.

Executed on _1 9_ January, 2024

Wolf Pawochawog-Mequinosh